Mathilda Wiczas, Appellant, v. Casimir S. Wiczas, Appellee.

Gen. No. 43,486.

Opinion filed January 8, 1947. Released for publication January 28, 1947.

AIKEN, MCCURRY, BENNETT & CLEARY, of Chicago, for appellant; CHARLES R. AIKEN, of Chicago, of counsel.

STEPHEN LOVE, of Chicago, for appellee.

MR. PRESIDING JUSTICE LEWE delivered the opinion of the court.

On August 4, 1944 plaintiff filed a petition for a rule to show cause based upon a separate maintenance

decree entered against defendant in the circuit court of Cook county on January 18, 1932. The petition alleged that there was due plaintiff the sum of $135.50. In his answer defendant's principal defense was that he procured a decree of divorce in Clark county, Nevada, on August 11, 1943, and that, since the matrimonial bonds had been severed, his obligation to pay for the support of plaintiff under the terms of the separate maintenance decree had terminated.

On December 29, 1944 the chancellor entered an order denying plaintiff's petition for a rule to show cause. Afterwards, on January 19, 1945, plaintiff filed a petition to vacate the order of December 29, 1944, which was denied on February 19, 1945. Plaintiff appeals from both orders.

The material facts are substantially uncontroverted. Defendant is 44 years of age, a member of the Illinois Bar, and has practiced his profession in Chicago since 1925. In 1932 a decree for separate maintenance was entered against him, which was subsequently modified by reducing the weekly payments from $5 to $2.50. In September 1935 he filed a complaint for divorce in the superior court of Cook county, charging plaintiff with desertion; and in March 1937 this complaint was dismissed for want of equity. In November 1942 defendant took an Army physical examination and shortly thereafter sold his office equipment and law practice, expecting to be inducted into the Armed Forces. Afterwards he was informed that he was not eligible for military service on account of his age. Thereupon he decided to abandon the practice of law and obtain employment in some industrial establishment. In the early part of 1943 he took a government sponsored course at a technical school. During this period he instituted legal proceedings to change his name to Wicks, for the reason that he was leaving a community where people of Polish extraction predominated and going to Nevada. Leaving Chicago on May 8, 1943 with all his belongings he arrived at Las

Vegas, Nevada on May 11, where he resided at the Hotel Last Frontier from May 12 to August 20, 1943. During his stay in Las Vegas defendant paid personal property taxes there and also registered his automobile in Nevada. On September 1, 1943 he left Las Vegas and went to Los Angeles where he was married several days later. In February 1944 he returned to Chicago because of his second wife's poor health, and has remained here ever since.

At the conclusion of defendant's direct examination in the instant proceeding the chancellor asked defendant the following question: "I want to ask you one question. Now being a lawyer and knowing, as I understand you to say, that you were going there for the purpose of obtaining a divorce; why didn't you notify your wife that you were going to apply for a divorce?" Defendant's counsel replied: "Just to make my point clear. Under the *Williams v. North Carolina* case (317 U. S. 287) I think this court is bound without any question at all, by the findings of the decree of divorce which have been set forth in our answer and admitted in their reply to the answer." The court: "You mean to say that any court can falsely claim that they have got jurisdiction—that they had jurisdiction of the parties and of the subject-matter and yet obtain what amounts to a valid divorce?" Whereupon defendant's counsel said, "Yes. I mean that is exactly what the Supreme Court said in the *Williams v. North Carolina* case."

After the foregoing colloquy the chancellor stated: "The court finds, as a matter of law, that after the defendant here left Illinois and went to the State of Nevada that he established what amounted, under the majority opinion of the *Williams v. North Carolina* in that case overruling the *Haddock* and *Atherton* cases—he established a *bona fide* residence there, which he had a legal right to do. And having done that and she having been notified not by personal service, per-

haps, of the copy of the bill, but having received notice of his action there and not having seen fit to take affirmative action on that—I don't mean by that she had to go there and fight the case—that she has prejudiced her own case, so that he, on this record up to date is a possessor of a *bona fide* decree of divorce of the sister state. And under the case I have got to follow, the rule to show cause will be denied."

In the trial court defendant urged that the Nevada divorce was entitled to full faith and credit in the case at bar and therefore the chancellor was precluded from making any inquiry into the jurisdictional findings of the Nevada court. In this court defendant maintains that "the evidence heard in this case in the Circuit Court of Cook County" clearly established the fact that the defendant was actually domiciled in Clark county, Nevada for six weeks prior to the filing of the Nevada divorce suit and that the plaintiff received notice of the filing of the Nevada divorce proceedings as early as July 7, 1943.

It is manifest from the chancellor's finding that he misapprehended the facts in *Williams v. North Carolina,* 317 U. S. 287, and therefore erred in basing his decision in the present case upon the ruling in the *Williams* case. In that case the question of domicile was not controverted as in the present case. Moreover, the fact that the chancellor found "as a matter of law" that defendant had "established what amounted to a *bona fide* residence" raises serious doubt as to whether any of the evidence bearing on the question of the Nevada court's jurisdiction was considered, except the bare recitals and findings of the Nevada decree.

In the recent case of *Atkins v. Atkins,* 393 Ill. 202, our Supreme Court after analyzing the opinions of the United States Supreme Court in the second case of *Williams v. North Carolina,* 325 U. S. 226, and *Esenwein v. Commonwealth ex rel. Esenwein* (Pa.),

325 U. S. 279, held, at page 207: "(a) that the power of a court to grant a divorce is founded on domicile, and (b) that the full-faith-and-credit clause operates only with respect to judgments rendered by a court whose jurisdiction either as to the subject matter or the person is not impeached."

On the question of domicile, the *Atkins* case cited with approval the law as announced in *Dunham v. Dunham,* 162 Ill. 589. At page 617 the court said: "It is perfectly clear, from the evidence, that the sole purpose of appellant in going to South Dakota was to obtain a divorce from appellee in the shortest possible time and with the least possible trouble and publicity, and that she had no intention of permanently residing there. The question of the jurisdiction of the South Dakota court is not concluded by its decree but is open to inquiry here. . . . The courts are not concluded by the findings in the foreign decree on the question of jurisdiction."

In the present case defendant admitted that he went to Nevada for the purpose of procuring a divorce decree. So far as the transcript of the Nevada divorce proceedings shows, defendant did not apprise the Nevada court of the entry of a separate maintenance decree here; nor did he inform the Nevada court that he had filed a bill for divorce charging plaintiff with desertion, which had been dismissed for want of equity.

■ ■ Under the authority of *Atkins v. Atkins,* 393 Ill. 202, and *Dunham v. Dunham,* 162 Ill. 589, the concealment of these facts from the Nevada court should have been considered by the chancellor in the instant case, for the purpose of determining whether defendant was guilty of practicing a fraud upon the Nevada court. The evidence clearly shows that the chancellor did not consider any of these facts but proceeded on the theory that he was concluded by the jurisdictional findings of the Nevada divorce decree.

For the reasons given, the orders of December 29, 1944 denying the rule to show cause, and of February 19, 1945 denying the motion to vacate the order of December 29, 1944 are reversed, and the cause is remanded with directions to proceed in a manner not inconsistent with this opinion.

*Reversed and remanded with directions.*

KILEY and BURKE, JJ., concur.